Bennie L. HAYES, Plaintiff,

v.

Joseph CALIFANO, Secretary of Health, Education and Welfare, Defendant.

No. 77–214C(B).

United States District Court,
E. D. Missouri, E. D.

Sept. 26, 1977.

Melvin D. Benitz, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

REGAN, District Judge.

Plaintiff Bennie L. Hayes commenced this action for judicial review of the decision of the defendant, Secretary of Health, Education, and Welfare denying disability insurance benefits which plaintiff claimed under Section 223 of the Social Security Act, 42 U.S.C. § 423. The action is before the Court upon the cross-motions of the parties for summary judgment. Fed.R.Civ. Pro. 56. The matter has been submitted upon the administrative record and memoranda of law filed by the parties.

On September 8, 1975 plaintiff applied for disability insurance benefits alleging that she became disabled on June 1, 1973 on account of a back condition. The application was denied after initial consideration, reconsideration, and a hearing held before an administrative law judge on September 29, 1976. On October 28, 1976 the administrative law judge ruled against plaintiff and on December 30, 1976 the Appeals

Council of the Social Security Administration affirmed. Thereafter this action was timely commenced.

In his decision the administrative law judge stated as follows:

At the time of the alleged onset date claimant had physical illness. There are objective medical findings in this case which establish the existence of illness and medical disorder * [* Residuals of two strokes and the aforementioned back condition.] to which claimant attributes disability. Claimant can sit, walk, stand, move about and lift light objects. Claimant's medical evidence reveals good muscular development, good limb and back motion. Claimant has good vision. Claimant lost several short periods of time from work for evaluation and treatment. Said medical disorder responds well to treatment. Claimant is usually asymptomatic when proper diet and regimen are observed. Claimant has previous work experience in light and moderately light work. Claimant's illness and impairment present a mild handicap in the performance of job duties. The evidence fails to show that claimant has been precluded from substantial gainful activity by physical or mental impairment. Claimant's medical condition was discovered before the alleged onset date. Thereafter, claimant worked regularly and successfully until the commencement of the period in question herein, wherein claimant alleges inability to engage in substantial gainful activity. The mere presence of an illness or impairment is not per se proof of disability. This claimant has failed to prove severe functional impairment and disability lasting a continuous 12 month period.

(Tr. 12–13). The administrative law judge also made the following specific findings:

2. Claimant has suffered from illness and impairment which lasted 12 full months, which resulted in a mild handicap in work, but which has not been of such severity as to preclude substantial gainful activity for 12 full months.

3. At all times herein relevant claimant had sufficient capacity, education, training and health to engage in significant functions and substantial gainful activity in previous work.

4. At all times herein relevant claimant retained sufficient residual capacity to perform the duties of light jobs which exist in significant numbers considering claimant's age, education, work experience, subjective complaints and the objective medical findings herein.

(Tr. 13). He determined ultimately that plaintiff was not disabled under the Social Security Act.[1]

■ Judicial review of this decision is limited to whether or not it is supported by substantial evidence in the record as a whole and whether or not the decision comports with the rules of law. 42 U.S.C. § 405(g); *Russell v. Secretary of Health, Education, and Welfare*, 540 F.2d 353 (8th Cir. 1976).

---

1. Within the meaning of the Social Security Act "disability" means

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A person is under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). An impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff was born January 9, 1936. She now resides in St. Charles, Missouri.

From October 2 to October 8, 1971 plaintiff was hospitalized for headaches of an undetermined origin. The primary diagnosis was cerebral dysrythmia and migraine headache. Plaintiff had been previously complaining of blurred vision. An electroencephalogram indicated abnormal paroxysmal dysrythmia consistent with an epileptic pattern. (Tr. 216).

From March 13 to March 18, 1973 plaintiff was hospitalized for pain in both feet. The discharge diagnoses were (1) intractable keratoma, plantar, second metatarsal head, bilateral; (2) intermetatarsal neuromata [4], 2nd and 3rd intermetatarsal spaces, bilateral; (3) onycocryptosis, medial and lateral hallux, left foot. (Tr. 207). After examining plaintiff Dr. George Fralick, M.D. reported

Nothing remarkable except she tends to have some intolerance to rich foods and occasional nausea. No palpitations. Occasional chest pain. No chronic or asthma. She states she has had occasional shortness of breath.

(Tr. 194). While hospitalized plaintiff underwent surgery on her feet. Plaintiff was discharged in satisfactory condition and given a post-operative instruction sheet and instructions to call for prescriptions and an appointment.

Plaintiff was seen at the Friendly Hills Medical Group in LaHabra, California, from July 1973 to September 1974. Plaintiff complained variously of fatigue, some low back pain, abdominal cramping and laryngitis, tension or migraine headaches, cervical or neck sprain, and uterine bleeding. She also experienced flushing and bruising which was attributed to low hormone level. On September 5, 1973 plaintiff was hospitalized for nausea, vomiting, and lower abdominal pain. The final diagnosis was dehydration due to nausea and vomiting, and acute cystitis. She was discharged on September 6 in an improved condition. (Tr. 150).

On June 28, 1974 plaintiff underwent a vaginal hysterectomy. Plaintiff had previously experienced heavy vaginal bleeding. Plaintiff's condition on discharge on July 5, 1974 was good.

On October 1, 1974 plaintiff was hospitalized for severe and refractory back pain. Dr. Harold Cohen, M.D., reported the history of the present illness as follows:

The patient has had progressive back pain, becoming very severe recently, and having a very gradual onset perhaps since June, the patient dating it to a time shortly after she had a vaginal hysterectomy in 1974, but more specifically from travelling extensively, having lived previously in LaHabre. She gave a history of having had a "bad disc" in the past. When she was seen on the 17th she had inability to sit, and had left leg radiation of the pain. Weight was 111 #. Blood pressure was normal. U.A. was normal. CBC was normal. Lumbosacral spine films and pelvic exams were normal for acute pathology . . . .. On 9–27 she was somewhat better, but she was still unable to sit. Because of this arthritic screen was done. At this time the rheumatoid arthritis test was positive. The C-reactive protein was positive . . . .. She continued to do extremely bad; on 9–30–74 had very severe pain, and on 10–1 was still quite ill and hospitalization was necessary.

(Tr. 79). Dr. Cohen diagnosed probable herniated lumbosacral disc, possible severe lumbosacral strain, and possible severe rheumatoid arthritis or collagin disease. When discharged on October 11 plaintiff had made only an incomplete response although she was considered to be in better condition. (Tr. 81).

On October 5, 1974 Dr. Morris D. Loffman, M.D., reported his neurosurgical consultation on plaintiff. Plaintiff found sitting to be painful in the low back and left sacroiliac region. However, walking and lying flat could be done with relative freedom from pain, unless plaintiff did prolonged walking. He diagnosed a left sacroiliac musculoligamentous sprain. He suggested that plaintiff be treated conserva-

tively with continued heat and massage to the lumbosacral spine and sacroiliac joints. (Tr. 82–83).

The October 25, 1974 report of a lumbar myelogram indicated an extradural L3–4 defect on the left, an uncommon lesion. Otherwise the myelogram was normal.

On October 29, 1974 Dr. Loffman reported that while at home plaintiff developed severe pain with radiation into the left lower extremity. Because of the severity of this pain and her inability to perform any activity, plaintiff was hospitalized on October 24, 1974. A myelogram revealed a defect at L3–4 level. Plaintiff found that on standing for any prolonged period of time her knee may give out and the pain in the lower left extremity increases. Also, she states that she gets a severe headache when she attempts to sit up. Dr. Loffman concluded that plaintiff had a disc herniation and suggested surgery. Surgery was performed on October 31, 1974 and plaintiff was discharged with significantly improved condition, although she had a slow post-operative course with severe persistent pain. (Tr. 90–92).

On September 22, 1975 Dr. Loffman reported that as of February 24, 1975 plaintiff's post-operative recovery was progressing well. He noted that "She had complaints of occasional stiffness in the lumbosacral region with prolonged sitting and moderate to mild pain on lateral flexion to the right and to the left. Neurologic examination, e. g. motor power, sensory examination, reflexes, and coordination, were within normal limits. (Tr. 106).

On May 13, 1975 plaintiff was examined by Dr. Henry E. Lattinville, M.D., a neurological surgeon. On May 19, 1975 he reported that she complained of getting fatigued and low back ache. However, she did not have any pain or paresthesias into the lower extremities. After examination he found no neurological deficits. She had a good range of motion in her lower extremity and trunk. He advised her in simple exercises to strengthen her legs and back, but not situps. He believed that her outlook is excellent and that, while she

tends to be quite tense and high-strung, Valium helps her. (Tr. 105).

At the request of the Missouri State Section of Disability Determinations plaintiff was examined by Santo W. Taglia, M.D. On October 16, 1975 he reported that he examined plaintiff on March 19. She complained of lumbosacral pain. He determined that plaintiff had a minimal interior compression fracture of L3. There was minimal scoliosis of the mid-lumbar spine. On December 18, 1975 Dr. Taglia reported that he last saw her on November 21 and that she had no complaints of back problems. However, he noted that she cannot stand or stay in a fixed position for long periods of time. Therefore, she was advised to do exercises for several months before attempting protracted employment.

Plaintiff alone testified before the administrative law judge. She stands 5 feet 4 inches tall and weights approximately 115 pounds. Her employment experience included being a note teller in a bank for two years and a data processing clerk for one and one half years.

She testified that she became disabled on June 1, 1973 following surgery on her feet. She terminated her bank employment at this time.

She testified that she is a high school graduate and that she studied banking and history for a semester in college. She is able to read and write. She types poorly. She has not worked since leaving the bank in June 1973.

While working for the bank she was required to stand all day in her teller position. In her data processing employment she typed letters, prepared payroll checks, and worked as a receptionist. She further testified that she worked at one time for a fertilizer company. Occasionally she was required to measure and check bags of fertilizer. From this work she received a hernia which is now repaired.

Plaintiff testified that she is now under a doctor's care. In 1976 she suffered two strokes, the first of which affected her arm and leg; the leg has gotten much better.

Plaintiff suffers back pain which is almost constant. Exercises provide relief from the pain. She testified that she can move her hands and arms, but has no strength in her right hand and arm. She bruises easily. She drives an automobile once a week and walks through her house for exercise. Her hobby is reading and she is learning embroidery. She grooms and dresses herself, but, because she has fallen in the shower, her daughter remains near when she showers. Plaintiff is able to sit, stand, and walk for only an hour or two without changing her position. She is unable to lift a gallon jug of milk.

After carefully considering the record of this action, the Court finds substantial evidence to support the Secretary's decision to deny benefits. Her employment did not terminate until June 1973. Thereafter, she was hospitalized for short periods in September 1973, June and July 1974, and October 1974. Following the back surgery in 1974, her condition improved substantially. In November 1975 she had no back problem complaints. Exercises were prescribed and the prognoses were generally optimistic. The medical reports indicated that she had no abnormal neurological condition in 1975. She was seen as having normal ranges of motion, although with back pain or ache for which exercises were prescribed. The record supports her ability to perform her past employment, that of a receptionist.

The record is not deficient for lack of a vocational expert's testimony, as she argues, since the nature and availability of receptionist work is commonly known in the metropolitan area in which plaintiff resides.

She complains of the failure to secure Dr. Turner's records of her strokes. The record was ordered kept open by the administrative law judge for seven days after the hearing. During this period the 101 pages of Dr. Jones' records were received, but Dr. Turner's records were not received. Although the medical records of her strokes were not received, the administrative law judge was able to observe, through plaintiff's testifying, the effects of her 1976 strokes. Clearly, the strokes did not disable her. The hearing record adequately investigated and set out her condition.

For these reasons the Court will sustain the motion of the Secretary for summary judgment and deny the similar motion of the plaintiff.